UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

*In re*:

CLINTON J. RASSBACH and
MOLLY A. RASSBACH,

        Debtors.

Case Number: 22-11344-7

---

BEN PARR,

        Plaintiff,

v.

CLINTON J. RASSBACH and
MOLLY A. RASSBACH,

        Defendants.

Adversary Number: 22-00050

---

**DECISION ON DEFENDANTS' MOTION TO DISMISS ADVERSARY
PROCEEDING UNDER FED. R. CIV. P. 12(b)(6)**

Plaintiff Ben Parr filed a complaint against Defendants and Debtors Clinton and Molly Rassbach seeking to except a debt from discharge. Plaintiff advanced three possible grounds: (1) money obtained by false pretenses, false representations, or fraud under 11 U.S.C. § 523(a)(2)(A); (2) willful and malicious injury under section 523(a)(6); or (3) false representations under section 727(a)(4).

Defendants moved to dismiss the complaint arguing it fails to state a claim upon which relief can be granted. The Court held a hearing on the motion on January 10 and granted the motion to dismiss the claim under section 727. Plaintiff then responded, arguing that the rest of the complaint

cannot be dismissed based on res judicata and collateral estoppel, and that the complaint properly states claims for relief under sections 523(a)(2) and (a)(6). Defendants replied in support of dismissal. For three reasons, the Court denies the motion.

## FACTS

The parties filed a joint pretrial statement and Defendants filed an answer.[1] These pleadings contain the following uncontested facts:

- Clinton and Molly Rassbach are married.
- They owned and operated C&M Custom Concrete, LLC ("C&M"), which specialized in stamped, colored, and traditional concrete work including driveways, patios, sidewalks, and basements.
- Plaintiff hired C&M to perform concrete work at his home.
- Clinton provided the estimate for the work to Plaintiff and performed the work.
- Plaintiff was dissatisfied with the work performed by C&M and Clinton.
- Following a trial in state court, the court found:
  - there was a deviation in performance and breach of contract;
  - there was pitting, poor stamping, and leaf prints in the concrete;

---

[1] The Defendants answered the complaint (Dkt. 20).

- the concrete was an improper thickness and the steps were improperly graded, creating noncompliance with a code provision;
- there was splatter on siding, windows, and doors;
- damages were $22,775.05 plus attorneys' fees and double damages.

The state court found Clinton Rassbach and C&M jointly liable to Plaintiff. It held that C&M "breached the agreement by failing to properly install the patio pursuant to the terms of the contract."[2] The court found "the patio was of improper thickness, and improperly graded," "[t]he steps on the patio were also improperly graded and not code compliant," and that "C&M mispresented the rebar placement as well as the contract thickness."[3] The court explained that the work performed by Clinton Rassbach and C&M "was certainly not 'as advertised.'"[4]

The court also found Clinton Rassbach and C&M violated the Wisconsin Home Improvement Practices Act, which prohibits making false, deceptive, or misleading representations to induce a person to enter into a home improvement contract.[5] There were no findings that any representations were made by Molly and no judgment was entered against her.

---

[2] ECF No. 1, Ex. 1 (Decision and Order from Eau Claire Cnty. Case No. 2021CV91).
[3] *Id.*
[4] *Id.*
[5] At first the decision awarded judgment against only C&M. Later, a new decision and order was issued determining that Clinton was jointly and severely liable with C&M. ECF No. 1, Ex. 4 (Decision and Order from Eau Claire Cnty. Case No. 2021CV91).

Clinton and Molly Rassbach filed a joint chapter 7 bankruptcy. Plaintiff filed the current adversary proceeding against them on November 18 seeking to except the judgment from discharge.

## DISCUSSION

The Defendants believe the complaint should be dismissed because it fails to state a claim upon which relief can be granted.

A. Jurisdiction

This Court has jurisdiction under 28 U.S.C. §§ 1334 and 157(a). Venue is proper in this Court as provided in 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (J). The Court may enter final judgment. 28 U.S.C. § 157(b)(1).

B. Motion to Dismiss Standard and Burden of Proof

A defense to a complaint is that the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint attacked by a Rule 12(b)(6) motion need not include detailed factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But a plaintiff must provide more than labels and conclusions. "[A] formulaic recitation of the elements of a cause of action will not do." *Id.*

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

4

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard asks for more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Further, a court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074 (7th Cir. 1997); *Harris v. City of Auburn*, 27 F.3d 1284, 1285 (7th Cir. 1994).

But there are two "working principles" the Supreme Court has set forth in analyzing motions to dismiss:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

*Iqbal*, 556 U.S. at 678–79 (citations omitted).

In an adversary proceeding, the party seeking to establish an exception to the dischargeability of a debt bears the burden of proof. *Goldberg Secs., Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir. 1992)*; Harris N.A. v. Gunsteen (In re Gunsteen)*, 487 B.R. 887, 899 (Bankr. N.D. Ill. 2013). A creditor must meet this burden by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *see also In re McFarland*, 84 F.3d 943, 946 (7th Cir. 1996). To further the policy of providing a debtor a fresh start, exceptions to

5

the dischargeability of a debt are to be construed strictly against a creditor and liberally in favor of a debtor. *See In re Crosswhite*, 148 F.3d 879, 881 (7th Cir. 1998); *Meyer v. Rigdon*, 36 F.3d 1375, 1385 (7th Cir. 1994).

    C.  <u>Res Judicata and Collateral Estoppel</u>

Plaintiff argues that the doctrines of res judicata and collateral estoppel bar Defendants' attempts to relitigate this matter. Wisconsin case law has replaced the "res judicata" and "collateral estoppel" nomenclature with "claim preclusion" and "issue preclusion," respectively. *See Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 550, 525 N.W.2d 723, 727 (1995). But "[d]espite the best efforts of courts throughout Wisconsin to replace res judicata and collateral estoppel nomenclature with claim and issue preclusion, legal professionals still use the former terms." *Hellenbrand Glass, LLC v. Pulvermacher (In re Pulvermacher)*, 567 B.R. 881, 886 (Bankr. W.D. Wis. 2017). Together, the doctrines prevent relitigating claims and factual and legal issues between parties that have already been settled in a different court or tribunal.

Plaintiff says that the state court determined that Clinton Rassbach and C&M did not perform pursuant to the home improvement agreements or as advertised and violated the Wisconsin Home Improvement Trade Practices Act. These findings were made after a two-day trial. He also implies that the failure to perform to the standards advertised equals a misrepresentation or willful and malicious act. Thus, Plaintiff argues that res judicata should apply, the debt subject to this adversary action should be found nondischargeable, and Defendants' motion to dismiss should be denied.

6

Plaintiff's analysis of res judicata misses the mark. The premise of Plaintiff's argument on this issue is that "[t]he doctrine of res judicata applies in the bankruptcy context." (Plaintiff's Response to Defendants' Motion to Dismiss; ECF No. 14). Plaintiff cites *Baermann v. Ryan (In re Ryan)*, 408 B.R. 143, 163 (Bankr. N.D. Ill. 2009) for this proposition.

But even after acknowledging that res judicata applies to bankruptcy, the court in *Ryan* refused to give it preclusive effect. There, creditors sued the debtor in an Illinois court before she declared bankruptcy, claiming that she committed fraud and violated the Illinois Residential Real Property Disclosure Act. They obtained a judgment against her in the amount of $15,320 plus costs. The debtor declared bankruptcy in 2007, and the creditors filed an adversary proceeding against the debtor seeking a determination that the state court judgment was a nondischargeable debt. The bankruptcy court dismissed the creditors' adversary proceeding without prejudice in January 2009 because they violated a pretrial order the court issued. One day later, the creditors filed a second adversary proceeding which made the same claims.

The court ruled that there was not "an identity of the causes of action," because "[a] claim under § 523(a)(2)(A) of the Bankruptcy Code is not *identical* to a claim for fraud under Illinois law or a claim under the Illinois Residential Real Property Disclosure Act. Moreover, the dischargeability claim could not have been litigated until the Debtor filed bankruptcy, which was after the state court action and judgment. *See* 11 U.S.C. § 523(c)(1); Fed. R. Bank. P. 4007(c)." *Ryan*, 408 B.R. at 164 (emphasis added).

7

In turn, the court in *Ryan* relied in part on the Seventh Circuit's reasoning in *Crop-Maker Soil Servs., Inc. v. Fairmount State Bank*, 881 F.2d 436, 439 (7th Cir. 1989). There, a creditor brought an adversary proceeding against the debtors' business, and the case was transferred to a district court. The district court ordered that any nonparties wishing to assert any claim or defense relating to the adversary proceeding move to intervene. Crop-Maker Soil Services, Inc. ("Crop-Maker") did not move to intervene, and the adversary proceeding was eventually dismissed. After it was dismissed, however, Crop-Maker sued Fairmount State Bank ("Fairmount") for fraud.

The district court granted Fairmount's motion for summary judgment because the matters raised in the action were barred by res judicata based on the earlier bankruptcy proceedings in that court. The Seventh Circuit agreed and applied res judicata, reasoning that Crop-Maker should not be allowed to sue Fairmount separately rather than participate in the prior bankruptcy proceeding, when both suits involved identical issues and parties.

These cases show that while res judicata might apply, it is the exception rather than the rule. Even rarer is when state court judgments are granted claim preclusion in federal bankruptcy proceedings.

This court has stated that "res judicata does not apply in nondischargeability proceedings." *Hellenbrand Glass*, 567 B.R. at 886 (citing *Brown v. Felsen*, 442 U.S. 127, 138–39 (1979)). This is because, "[s]ince *Brown*, 'there is a general rule that state court judgments do not have res judicata effect on nondischargeability actions under § 523.'" *Stoughton Lumber Co., Inc.*

8

*v. Sveum (In re Sveum)*, Nos. 12-15483, 13-00002, 2013 Bankr. LEXIS 2761, 2013 WL 3404097, at *2 (Bankr. W.D. Wis. July 8, 2013) (Slip opinion) (quoting *Voss v. Pujdak (In re Pujdak)*, 462 B.R. 560, 569 (Bankr. D.S.C. 2011)). As the court in *Ryan* suggested, questions of whether the debtor acted fraudulently or willfully and maliciously for dischargeability purposes are questions of federal bankruptcy law, not state law.

Collateral estoppel ("issue preclusion") also operates in the bankruptcy context to a similar effect:

> Although judgments of nonbankruptcy courts on questions of fraud, willfulness, malice, and other issues may not be binding on a bankruptcy court, under certain conditions, debtors will be collaterally estopped from re-litigating in the bankruptcy court factual determinations made in connection with such judgments. Claim preclusion, also known as res judicata, generally refers to the effect of a prior judgment in foreclosing successive litigation on the very same claim, whether or not re-litigation of the claim raises the same issues as the earlier suit. Issue preclusion, or collateral estoppel, refers to the effect of a prior judgment in foreclosing successive litigation on an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or different claim. The party seeking to enjoy the benefits of collateral estoppel has the burden of proving that the elements are satisfied.

ROBERT E. GINSBERG, ET AL., GINSBERG & MARTIN ON BANKRUPTCY § 11.07[E][2] (6th ed. 2023).

In short, a nondischargeability action in bankruptcy court really involves two separate causes of action: (1) liability for a debt, and (2) the dischargeability of that debt. And even though a state court sometimes makes the first determination before a bankruptcy case is filed, the bankruptcy court is empowered to make both determinations if that doesn't occur.

Here, the state court determined an amount of actual damages, doubled the damages without explaining the factual basis but relying only on the ability to do so, and awarded attorney's fees. And it made findings that "the patio was of improper thickness, and improperly graded," "[t]he steps on the patio were also improperly graded and not code compliant," "C&M mispresented the rebar placement as well as the contract thickness," and that the work performed "was certainly not 'as advertised.'" These findings of fact differ from the findings required to prove nondischargeability under section 523(a)(2)(A).

D. <u>False Pretenses, Misrepresentation, or Actual Fraud Under 11 U.S.C. § 523(a)(2)(A)</u>

Despite the determination that the preclusive effects of res judicata and collateral estoppel do not apply at this stage, the rest of the complaint survives Defendants' motion.

11 U.S.C. § 523(a)(2)(A) provides:

> A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt— for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

To prevail on a claim under section 523(a)(2)(A), the party seeking a determination of nondischargeability must prove by a preponderance of the evidence:

(1) the debtor made a false representation or omission,
(2) that the debtor (a) knew was false or made with reckless disregard for the truth and (b) was made with the intent to deceive,
(3) upon which the creditor justifiably relied.

*Ojeda v. Goldberg*, 599 F.3d 712, 717 (7th Cir. 2010).

10

Defendants argue that the complaint fails to sufficiently plead any element of section 523(a)(2)(A). They argue that the complaint offers no recitations of the facts of any actual misrepresentations made by Defendants. They also claim that the complaint "grossly mischaracterize[s]" the state court decision.

The complaint lacks specific allegations with regard to any actual fraud. Rather, it suggests that because the actual performance differed from the terms specified or in compliance with an unspecified code, that must be an omission or misrepresentation that should be considered a false pretense or misrepresentation.

Defendants also claim the complaint does not plead the Defendants' intent to deceive or justifiable reliance by the Plaintiff on any alleged misrepresentation. Defendants concede that the state court found that the rebar placement and contract thickness were not as represented, but Plaintiff's failure is that more facts are required to show reliance on the misrepresentation.

Whether the statements were false when they were made cannot be confirmed based on the face of the complaint. Neither, however, would it be proper to infer that no false representations of fact were made at that time and relied on by Plaintiff. The complaint states that Defendants "engaged in fraudulent activities including making misrepresentations about not only the quality of the work to be performed but also in the work that was performed." Plaintiff says that "Debtor's false, deceptive, and misleading representations

11

lured Parr to enter into the aforementioned contract with Debtor resulting in monetary damages to Parr." And, as Defendants concede, the judgment from the state court found that "C&M misrepresented the rebar placement as well as the contract thickness."

These allegations are enough to at least state a claim for which relief might be granted. Whether the state court found that the Defendants made misrepresentations or not, or whether the Defendants intended to deceive Plaintiff and that Plaintiff reasonably relied on the misrepresentations, there is at least enough for this Court to say that it is plausible that there is a cause of action. For this reason, the claim under section 523(a)(2)(A) survives Defendants' motion to dismiss.

 E. <u>Willful and Malicious Injury Under Section 523(a)(6)</u>

Next, 11 U.S.C. § 523(a)(6) provides: A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt— for willful and malicious injury by the debtor to another entity or to the property of another entity. An exception to discharge under section 523(a)(6) must contain the following: (1) an injury caused by the debtor (2) willfully and (3) maliciously. *First Weber Grp., Inc., v. Horsfall*, 738 F.3d 767 (7th Cir. 2013).

Plaintiff must show "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). But as explained by the Seventh Circuit in *Horsfall*, "[a]lthough *Geiger* refers to intentional torts to help explain the federal

12

standard, it does not hold that all state-law intentional torts are 'willful' for purposes of section 523(a)(6)." *See Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 322 (7th Cir. 2012) ("[A]n intentional tort needn't involve an intent to cause injury."). So willfulness can be found either if the "debtor's motive was to inflict the injury, or the debtor's act was substantially certain to result in injury." *See Horsfall*, 738 F.3d at 774 (citing *Bukowski v. Patel*, 266 B.R. 838, 844 (E.D. Wis. 2001) (noting substantially similar standards for willfulness in the Fifth, Sixth, Eighth, and Ninth Circuits)).

Next, maliciousness requires that the debtor acted "in conscious disregard of [his] duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994) (citation omitted). The Seventh Circuit in *Jendusa-Nicolai* summarized the exception to discharge as "one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act." *Jendusa-Nicolai v. Larsen*, 677 F.3d at 324.

The complaint here states that Defendants' "failure to perform as advertised caused harm to [Plaintiff's] property," that the "failure to perform to the extent of the written estimate was a knowing and deliberate act," and that his "false representations regarding the status of the completion of the work performed was a knowing and deliberate act." These allegations are supported by the attached exhibits. Indeed, the state court found that Plaintiff was injured by Defendants' actions. The state court also held that "C&M was responsible for ensuring that the patio was code complaint," but that it was not

13

code compliant. And finally, that the "pitting, leaf prints, and improper stamping was certainly not 'as advertised.'"

Defendants seek to dismiss this count because they allege that the Plaintiff does not cite facts to support a contention that Clinton Rassbach intended to harm Plaintiff. And, they argue, Plaintiff doesn't plead or cite facts to show that Defendants acted in "conscious" disregard of their duties. (Emphasis in original). Finally, Defendants cite *Geiger* for the argument that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."

But as the Seventh Circuit has explained, in *Horsfall*, *In re Thirtyacre*, and *Jendusa-Nicolai*, none of the defects that the Defendants complain of support their motion to dismiss. "[W]illfulness can be found either if the 'debtor's motive was to inflict the injury, or the debtor's act was substantially certain to result in injury.'" *See Horsfall*, 738 F.3d at 774 (internal citation omitted). Here, the complaint clearly states that the work performed by Defendants was substantially likely to result in injury. And that it in fact did. Next, maliciousness requires that the debtor acted "in conscious disregard of [his] duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Thirtyacre*, 36 F.3d at 700 (citation omitted). As the state court held, it was C&M's responsibility to ensure that the driveway and patio steps were code compliant, but they weren't.

The complaint's allegations under section 523(a)(6) survive the Defendants' motion to dismiss.

14

### F. Claim Against Molly Rassbach

The Defendants argue that Molly Rassbach should be dismissed from the adversary proceeding. The Defendants argue that Molly A. Rassbach is not alleged to have any personal knowledge or involvement with the business's dealings with Plaintiff. Nor did she have any dealings directly with the Plaintiff. They highlight that she was not a party to the state court lawsuit, and that the only mention of Molly in the current complaint is that she and Clinton are married and co-own C&M.

Plaintiff, on the other hand, says that Molly has liability for Clinton's actions as an owner and operator of C&M. Plaintiff argues that as an owner and principal of C&M, Molly is liable for any actions taken by the agents of C&M, including Clinton, who was acting as the company's agent. And Plaintiff argues that Molly is liable because she knew or should have known of her "husband-employee/agent's" actions, and that the money received by the business would benefit the family. Finally, Plaintiff believes that even if she did not know and should not have known about the fraudulent activities of her husband, then she was at least recklessly indifferent, and should therefore be held liable for his actions as well.

Molly will not be dismissed from this litigation. First, it is plausible that she may be personally liable for the debt should the Court later rule that it is nondischargeable. Second, Molly is properly a defendant under 11 U.S.C. § 524(b) through Federal Rule 20.

The Supreme Court very recently weighed in on whether a spouse/business co-owner of an entity is liable for fraud committed by their spouse/business co-owner. In *Bartenwerfer v. Buckley*, 598 U.S. __, 143 S. Ct. 665 (2023), the Bartenwerfers (a couple acting as business partners) decided to flip a house for profit. The husband hired an architect, structural engineer, designer, and general contractor. He monitored their work, reviewed invoices, and signed checks. The wife was "largely uninvolved." They sold the home to Buckley, who then sued the Bartenwerfers after noticing several undisclosed defects. A state court ruled for Buckley. The Bartenwerfers could not pay the judgment and filed bankruptcy. The Supreme Court reasoned that the passive voice of section 523(a)(2)(A) "pulls the actor off the stage." In other words, "[t]he debt must result from someone's fraud, but Congress was agnostic about who committed it." *Id.* (quotation omitted). Thus, the Court found that the debt was nondischargeable as to Mrs. Bartenwerfer.

Clinton and Molly are husband and wife and they co-owned C&M. While the lower court in *Bartenwerfer* found that the couples' entity was a partnership, it's unclear whether C&M can properly be characterized as such. Yet considering *Bartenwerfer*, it's at least plausible that Molly can be held personally liable for the debt of C&M, whether as an imputed partner or acting principal, as alleged by Plaintiff.

It is alleged that the debt to Plaintiff was incurred in the interest of the marriage and family. Wisconsin is a community property jurisdiction. If this case concludes in favor of Plaintiff and against Clinton, any community

16

property of the Defendants would be available for satisfaction of the debt and not be subject to the discharge under section 524(b)(1). And Federal Rule of Civil Procedure 20(a)(2), incorporated here by Federal Rule of Bankruptcy Procedure 7020, states that a party

> may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Even if Molly is determined not to have personal liability, there may still be in rem claims against her interest in any community (marital) property. Any income from C&M, along with all community property, could be available for any nondischargeable debt that may be found against Clinton if the debt is a family purpose obligation. Additionally, even if not family purpose, some community property might still be available. Thus, Molly is properly included in this proceeding as a defendant because (1) she might be personally liable for the claims alleged, or (2) as an owner of property that may be seized for execution of a judgment, she has an interest in the determination of what property may be available.

G. <u>A Remaining Issue to be Determined</u>

There is one other issue that has not yet been addressed by either party. Three potential determinations could be made related to dischargeability. First, the debt is nondischargeable as to both Clinton and Molly. Second, the debt is

17

dischargeable as to both Clinton and Molly. Third, the debt is nondischargeable as to Clinton but dischargeable as to Molly. It is this third scenario that has not been addressed by either party. Further consideration of this latter issue will await the final hearing and argument of the parties.

## CONCLUSION

Plaintiff's claims will not be given the preclusive effect of res judicata based on the underlying state court judgment. The complaint states plausible claims for relief that are enough to survive Defendants' motion to dismiss. For these reasons, the Defendants' motion to dismiss is DENIED.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated:  March 13, 2023

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge